UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DONGXIAO YUE, | Case No. 15-cv-05526-PJH |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING LEAVE TO FILE FIRST AMENDED COMPLAINT, DENYING MOTION TO LIFT RESTRICTION ON DISCOVERY PERIOD, AND VACATING HEARING** |
| MSC SOFTWARE CORPORATION, | |
| Defendant. | |
| | Re: Dkt. No. 37 |

Before the court is pro se plaintiff's Dongxiao Yue's motion for leave to file a first amended complaint and to lift the time restriction on the discovery period. Dkt. 37. The matter is fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for July 20, 2016 is VACATED. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This is a copyright case involving computer software. Beginning in 1994, Dr. Yue developed a software program called "PowerRPC," which allows computers to remotely access other computers. Compl. ¶ 11 (Dkt. 1). In 1996, Yue founded an LLC, Netbula, to market PowerRPC. Compl. ¶ 12. Yue is the founder and sole owner of Netbula LLC. In 2005 and 2006, Netbula registered two copyrights in PowerRPC. Compl. ¶ 4. In 2007, Yue registered a copyright in the "pre-1996" version of PowerRPC, and Netbula assigned its copyrights in PowerRPC to Yue. Compl. ¶ 4.

///

Defendant MSC Software Corporation ("MSC") developed and sells the software programs PATRAN and Supermodel. Compl. ¶¶ 24–25. Yue alleges that these programs incorporate and use copyrighted elements of the PowerRPC software. Compl. ¶¶ 25–30. Based on that incorporation, plaintiff asserts five copyright claims against defendant. Compl. ¶¶ 38–68. Plaintiff also asserts a single claim of trademark infringement against defendant. Compl. ¶¶ 69–77.

On February 26, 2016, MSC's motion to dismiss Yue's trademark claim came on for hearing. The court denied the motion. Dkt. 24. At a subsequent case management conference, the court set a pretrial schedule and limited the discovery period to the past five years. Dkt. 30.

Yue now brings a motion for leave to file a first amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), and to lift the limitation on the discovery period. Mot. at 1 (Dkt. 37). Yue's proposed amended complaint seeks to assert two new claims (the "fraud claims"), alleging intentional fraud and unfair competition in violation of California law. See Proposed First Amended Complaint ("PFAC") ¶¶ 84–97 (Dkt. 37-1).

Yue's new fraud claims arise out of a 2001 contract between MSC and Netbula (the "Agreement"). In June 2001, MSC signed a software license agreement with Netbula, which included five developer licenses and the right to distribute 1000 copies of software containing the PowerRPC "runtime files." PFAC ¶ 25. In August 2005, MSC terminated the Agreement. PFAC ¶ 27. Around that time, "Plaintiff requested MSC Software to provide an accurate count of the licenses" actually used under the Agreement; MSC gave this number as 159. PFAC ¶ 28. Yue alleges that when MSC terminated the Agreement, it "represented to Plaintiff that it had stopped using PowerRPC." PFAC ¶ 85. Contrary to MSC's representation, Yue alleges that "in fact" PATRAN and SuperModel were developed with and used PowerRPC and were infringing on "a massive scale since 2004." PFAC ¶ 86. On the basis of these new fraud claims, Yue seeks to extend the discovery period "to June 2001 or earlier." Mot. at 1.

///

MSC opposes leave to amend the complaint as futile, because Yue lacks standing to assert the fraud claims. Opp'n at 1 (Dkt. 38). MSC contends that because the fraud and unfair competition claims arise from an agreement between MSC and Netbula, these causes of action belong to Netbula, and not Yue personally. Opp'n at 2. MSC argues that Yue attempts to blur the legal distinction between Yue and his company in order to circumvent the rule against pro se representation of corporate entities, noting Yue's previous attempts, in other cases in this district, "to litigate, pro se, claims that properly belong to" Netbula. Opp'n at 1.

## DISCUSSION

**A.   Legal Standards**

   1.   Federal Rule of Civil Procedure 15(a)(2)

Under Federal Rule of Civil Procedure 15, a party may amend its pleading as matter of course within 21 days. Fed. R. Civ. P. 15(a)(1). Thereafter, amendment requires either the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). However, courts should "freely give leave when justice so requires." Id. In deciding whether to grant a motion for leave to amend, the court considers bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the moving party has previously amended the pleading. In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013). Of these factors, the consideration of prejudice to the opposing party carries the greatest weight. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003). "The party opposing amendment bears the burden of showing prejudice." See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir.1987).

   2.   Standing

"Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." Chandler v. State Farm Mutual Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). There are three requirements for standing: (1) the plaintiff must suffer an actual or imminent, concrete, and particularized injury-in-fact; (2) the injury must

3

1  be fairly traceable, as a casual matter, to the conduct of the defendant; and (3) the injury
2  must be redressable by a favorable judicial decision.  See Lujan v. Defenders of Wildlife,
3  504 U.S. 555, 560–61 (1992).  "[A] plaintiff must demonstrate standing for each claim he
4  seeks to press and for each form of relief that is sought.  DaimlerChrysler Corp. v. Cuno,
5  547 U.S. 332, 352 (2006) (citation and quotations omitted).

6  **B.    Analysis**

7  The determinative issue in this motion is whether Yue has standing to bring the
8  fraud claims.  If he does not, then granting leave to amend would be futile, unless
9  Netbula were joined as a plaintiff.  "Futility alone can justify a court's refusal to grant
10 leave to amend."  Novak v. United States, 795 F.3d 1012, 1020 (9th Cir. 2015) (citations
11 and quotations omitted).

12 Yue's fraud claims center on alleged misrepresentations that MSC made in 2005,
13 surrounding the termination of MSC's software license with Netbula.  Yue claims that
14 these misrepresentations led him to believe MSC had stopped using PowerRPC,
15 preventing him from uncovering their infringement until 2014.  PFAC ¶¶ 27–29, 85–86.  It
16 is not disputed that the software license was between MSC and Netbula, and that Yue
17 was not personally a party to this contract.  PFAC ¶ 25; Dkt 40, Ex. A.

18 Yue argues that he has standing because the relevant misrepresentations were
19 made to him.  Reply at 6 (Dkt. 41).  In particular, Yue cites an exchange between Netbula
20 and him wherein Netbula represented the number of licenses used under the Agreement
21 as 159.  PFAC ¶ 28.  MSC has produced this email exchange, which was made in July
22 2005 between a representative of MSC and one "John Young," using the email
23 "sales@netbula.com".  Dkt. 40, Ex. C–E.  Yue avers, plausibly, that "John Young" was an
24 alias for Dongxiao Yue.  Dkt. 41-1 ¶ 16.

25 Accepting as true the allegation that the alleged misrepresentations were made to
26 Yue in the literal sense, this does not mean that the fraud claims are Yue's to assert.
27 When communicating with MSC in 2005, Yue was clearly acting on Netbula's behalf and
28 as a representative of Netbula.  Yue used the "sales@netbula.com" email address, and

4

he signs the email "John Young; Netbula LLC". Dkt. 40, Ex. C. Moreover, given the context, it is obvious that Yue was acting on Netbula's behalf. The 2005 communications between MSC and Yue were all in relation to the 2001 Agreement between MSC and Netbula. Dkt 40, Ex. A.

Because the alleged misrepresentations were made to Netbula, and concerned a contractual relationship between MSC and Netbula, Yue lacks standing to assert these claims. "A person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship." Ambers v. Wells Fargo Bank, N.A., 13–cv–03940–N C, 2014 WL 883752, at *4 (N.D. Cal. Mar. 3, 2014) (emphasis added). See also Paclink Commc'ns Int'l v. Superior Court, 90 Cal. App. 4th 958, 965 (2001) ("Because members of the LLC hold no direct ownership interest in the company's assets, the members cannot be directly injured when the company is improperly deprived of those assets."); Lombardi v. Pleasure Cove Resort Asset Mgmt. Grp., No. C 05-05219 RS, 2006 WL 1709723, at *2 (N.D. Cal. June 21, 2006) ("Under California law that governs the LLC, Petty's status as member of the LLC does not give him any legal interest in the property of the LLC.") (citation omitted).

The facts of NovelPoster v. Javitch Canfield Group are instructive here. See No. 13-CV-05186-WHO, 2014 WL 5687344 (N.D. Cal. Nov. 4, 2014). In NovelPoster, Mark Javitch, the founder and owner of The Javitch Group LLC, entered into an agreement between his LLC and Alex Yancher regarding Yancher's business NovelPoster. Id. at *1. After this business relationship soured, Javitch's LLC took control of NovelPoster in attempt to mitigate their damages from a breach of contract. Id. at *2. Because the contract at issue was "between counterdefendants and The Javitch Group LLC, not between counterdefendants and [Javitch]", the court held that the breach of contract claims could not be asserted by Javitch, a non-party to the contract. Id. at *4–*5. Moreover, because the fraud claims are "injuries arising directly from the alleged contract," they too could not be brought by Javitch. Id. at *6. This result aligns with the general rule that, to prove fraud, "it is axiomatic that plaintiff must allege she 'actually

relied upon the misrepresentation.'" Schauer v. Mandarin Gems of Cal., Inc., 125 Cal. App. 4th 949, 960 (2005) (emphasis added). Here, Netbula, not Yue, is the party that would have relied on the alleged misrepresentations.

Yue also argues that his "pre-1996" copyright in PowerRPC gives him standing to bring the fraud claims. The argument appears to be that even if the misrepresentations were not made to him personally, he suffered indirect injury from the fraud as the copyright owner of the predecessor code to PowerRPC. Reply at 2–4. Although the complaint tries to blur any distinction by referring generally to "Plaintiff's software," the copyrighted work that MSC allegedly used after its 2005 termination would be the same work that was the subject of the Agreement between Netbula and MSC. See PFAC ¶ 27–29. Prior to 2007, that work was owned by Netbula. PFAC ¶ 4; Dkt. 41-1 Ex. 2. "Netbula PowerRPC" may well have been a derivative work of code that Yue wrote prior to creating Netbula in 1996, but there is no allegation that it was unauthorized. 17 U.S.C. § 103. Moreover, the context makes it clear that Yue, who founded Netbula in order to market and distribute PowerRPC, granted Netbula an implied license in any pre-1996 copyright interest during the relevant period. Any copyright injury prior to 2007 would thus be to Netbula, and not Yue personally.

Accordingly, plaintiff lacks standing to bring the fraud claims. Granting leave to amend would be futile, unless and until Netbula is joined as a party. Because Yue's request to lift the restriction on the discovery period is based upon the new fraud claims, this request, too, must be denied. The court's prior order required a showing of good cause to extend the discovery period beyond five years, Dkt. 30, and the fraud claims do not provide such a basis for extension.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to file an amended complaint and to lift the restriction on the discovery period is DENIED. The hearing set for July 20, 2016 is VACATED. If plaintiff wishes to assert the fraud claims, he will need to join Netbula as a plaintiff, secure counsel, and seek leave of the court or consent from the

6

defendant to amend the complaint.

**IT IS SO ORDERED.**

Dated: July 15, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge